**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

Victor Dejesus,

       Plaintiff,

      -against-

Commissioner of Social Security,

       Defendant,

Social Security Administration,

       Interested Party.

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/3/2026

24-cv-09435-CS-VR

**REPORT &**
**RECOMMENDATION**

VICTORIA REZNIK, United States Magistrate Judge

**TO THE HONORABLE CATHY SEIBEL**, United States District Judge:

  Plaintiff Victor Dejesus brings this action under 42 U.S.C. § 405(g), seeking judicial review of a final determination of the Commissioner of Social Security (the Commissioner), which denied his application for disability benefits under the Social Security Act and Supplemental Security Income, and found that he was not disabled. This action is before the undersigned under an Order of Reference entered on December 12, 2024. (ECF No. 5). Plaintiff now moves for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure (ECF No. 14), which the Commissioner opposes (ECF No. 18). For the reasons below, I respectfully recommend that Plaintiff's motion be **DENIED**.

## I.    BACKGROUND[1]

### A. Application History

On September 22, 2022, Plaintiff applied for disability benefits under the
Social Security Act. (ECF No. 10 at 192–200).[2] Shortly thereafter, he applied for
supplemental social security income as well. (*Id.* at 201–10). In both applications, he
alleged that he had been disabled since April 4, 2022. (*Id.* at 189, 201). Both of
Plaintiff's claims were administratively denied in January 2023 (*Id.* at 61, 74, 95–
104), and again after reconsideration in July of that same year. (*Id.* at 84–85, 112–
119).

Plaintiff requested a hearing before an Administrative Law Judge (ALJ) (*id.*
at 120–21), and a hearing was scheduled for January 10, 2024. (*Id.* at 163–86).
Plaintiff appeared at the hearing with his attorney and testified about his prior
work experience, purported impairments, and general medical history. (*Id.* at 38–
55). A vocational expert also testified. (*Id.* at 56–59).

In February 2024, the ALJ issued a written decision, in which he concluded
that Plaintiff was not disabled under the Social Security Act. (*Id.* at 18–33).
Plaintiff sought review by the Appeals Council, but his request was denied. (*Id.* at

---

[1] The information in this section is taken from the administrative record of the Social Security
Administration, filed by the Commissioner on March 12, 2025. (ECF Nos. 10, 10-1, 10-2) (SSA
Record). The undersigned conducted a plenary review of the entire administrative record, familiarity
with which is presumed. The undersigned assumes knowledge of the facts surrounding Plaintiff's
medical history and does not recite them in detail, except as relevant to the analysis set forth in this
Report and Recommendation.

[2] All page numbers to documents filed on ECF refer to the blue pagination generated by ECF in the
top right corner of a given page, not the sequential numbering of the SSA Record in the bottom right
corner of the page.

5–10). He then commenced this action in December 2024. (ECF No. 1). Plaintiff now moves for judgment on the pleadings. (ECF No. 14). The Commissioner opposed the motion (ECF No. 18), and Plaintiff replied (ECF No. 20).

### B. Record Before the ALJ

In his motion papers, Plaintiff provided a summary of the testimonial, medical, and vocational evidence in the administrative record (ECF No. 14 at 3–8), which the Commissioner "adopt[ed]" in its opposing memorandum of law. (ECF No. 18 at 6). Based on an independent and thorough examination of the administrative record, the undersigned finds that the summary of the evidence is largely comprehensive and accurate. Thus, the undersigned adopts the summary and details the SSA Record below only as needed to determine the issues the parties raise. *See Roane v. O'Malley*, 22 Civ. 10704 (AEK), 2024 WL 1357845, at *2 (S.D.N.Y. Mar. 29, 2024).

## II.   LEGAL STANDARDS

### A. Standard of Review

This Court "engage[s] in limited review" of the Commissioner's decision. *Schillo v. Saul*, 31 F.4th 64, 74 (2d Cir. 2022). The Court "conduct[s] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Id.*; *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "The substantial evidence standard is a very

deferential standard of review," so that it is not the function of the Court "to determine *de novo* whether a plaintiff is disabled." *Schillo*, 31 F.4th at 74 (internal quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "[T]he reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Id.* "[O]nce an ALJ finds facts, [this Court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Id.* (internal quotation marks omitted).

But "where an error of law has been made that might have affected the disposition of the case, this [C]ourt cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (alteration and internal quotation marks omitted). Thus, "[f]ailure to apply the correct legal standards is grounds for reversal." *Id.* "When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear in relation to the evidence in the record, the Court may remand to the Commissioner "for further development of the evidence" or for an explanation of the ALJ's reasoning. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996); *accord Fowlkes v. Adamec*, 432 F.3d 90, 98 (2d Cir. 2005).

B. **Statutory Disability**

Under the Social Security Act, a claimant is disabled when the claimant lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *Schillo*, 31 F.4th at 69–70. The claimant is eligible for disability benefits

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Social Security Regulations, 20 C.F.R. § 404.1520(a)(4)(i)–(v), set forth a five-step sequential analysis for evaluating whether a person is disabled under the Social Security Act. *See Schillo*, 31 F.4th at 70. "If at any step a finding of disability or nondisability can be made, the Commissioner will not review the claim further." *Id.* (alteration and internal quotation marks omitted). Under the five-step process, the Commissioner determines the following:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe physical or mental impairment, or combination of severe impairments;[3]

---

[3] A severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

5

(3) whether the impairment (or combination) meets or equals the severity of one of the impairments specified in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments");[4]
(4) whether, based on an assessment of the claimant's residual functional capacity, the claimant can perform any of her past relevant work;[5] and
(5) whether the claimant can make an adjustment to other work given the claimant's residual functional capacity, age, education, and work experience.[6]

*Schillo*, 31 F.4th at 70 (citing 20 C.F.R. § 404.1520(a)(4)(i)–(v)). "At step three, the [Commissioner] determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies." *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003). But "[i]f the claimant's impairment is not on the list, the inquiry proceeds to step four." *Id.* "The claimant bears the burden of proof in the first four steps of the sequential inquiry." *Schillo*, 31 F.4th at 70. "In step five, the burden shifts, to a limited extent, to the Commissioner to show that other work exists in significant numbers in the national economy that the claimant can do." *Id.* "Because the shift in step five is limited, the Commissioner need not provide additional evidence of the claimant's residual functional capacity." *Id.* (internal quotation marks omitted).

---

[4] Listed impairments are presumed severe enough to render an individual disabled, and the criteria for each listing are found in Appendix 1 to Part 404, Subpart P of the SSA regulations. 20 C.F.R §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d). If the claimant's impairments do not satisfy the criteria of a listed impairment at step three, the Commissioner moves on to step four and must determine the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e).
[5] A claimant's RFC represents "the most [the claimant] can still do despite [their] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).
[6] To support a finding that the claimant is disabled, there must be no other work existing in significant numbers in the national economy that the claimant, considering his or her RFC and vocational factors, can perform. 20 C.F.R. § 404.1560(c).

### III.    THE ALJ'S DECISION

In his decision, the ALJ applied the requisite five-step analysis to assess Plaintiff's disability claim. (ECF No. 10 at 22–23). At step one, he determined that Plaintiff did not engage in substantial gainful activity after April 4, 2022, the date his alleged disability began. (*Id.* at 23). At steps two and three, he determined that Plaintiff's physical impairment of focal epilepsy was severe (*id.* at 23), but his mental impairment of "adjustment disorder with depressed and anxious mood" was not, as it did not cause "more than [a] minimal limitation in Plaintiff's ability to perform work." (*Id.*). The ALJ further found that Plaintiff's mental impairments, either singly or combined, did not equal the necessary severity. (*Id.* at 24, 28).

In reaching that conclusion, the ALJ proceeded through each of the four broad functional areas that must be reviewed: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating persisting, or maintaining pace; and (4) adapting or managing oneself. (*Id.* at 24–27).[7] Relying on psychiatric consultative examinations by Drs. Miceli and Goldstein that each concluded that Plaintiff had mild limitations, the ALJ found Plaintiff had a mild limitation in each of the four functional areas. (*Id.*). Based on the combination of these mild limitations in the four functional areas and the other evidence in the SSA record, the ALJ found that Plaintiff's mental impairment caused nothing more

---

[7] If a claimant is found to have a medically determinable mental impairment, the ALJ must rate the degree of functional limitation resulting from the impairment across the four broad functional areas described above. 20 C.F.R. §§ 404.1520a(a), (c)(2)-(3), 416.920a(a), (c)(2)-(3). If a claimant has no more than mild limitations in the four broad functional areas, then the ALJ will generally conclude that the mental impairment, or combination of impairments, is non-severe. *Id.* at §§ 404.1520a(d)(1), 416.920(a)(d)(1).

than "a minimal limitation" in his ability to perform basic work, thereby rendering that impairment "non-severe." (*Id.*).[8]

After reviewing the four functional areas, the ALJ also analyzed "prior administrative findings," which included evidentiary reviews done by Dr. Blackwell and Dr. Lieber-Diaz. (*Id.* at 28). Dr. Blackwell concluded that Plaintiff's mental impairments were mild and not severe (*id.* at 64–65), whereas Dr. Lieber-Diaz concluded that Plaintiff had moderate limitations in the first and third functional areas, with mild limitations in the second and fourth areas (*Id.* at 78). The ALJ found Dr. Blackwell's opinion persuasive because it was consistent with the opinions of Drs. Miceli and Goldstein. (*Id.* at 28). But Dr. Lieber-Diaz's opinion regarding moderate limitations was found unpersuasive because it was "inconsistent" with the SSA record and the opinions of Drs. Miceli and Goldstein. (*Id.*). Moreover, the ALJ noted that Plaintiff "has denied any in-patient or out-patient mental health treatment," which also supported only a "mild limitation." (*Id.*)

At step four, the ALJ determined that Plaintiff had an RFC "to perform a full range of work at all exertional levels," but not work that was done at unprotected heights, involved working around dangerous machinery, or required operating a motor vehicle. (*Id.* at 28). He explained that he arrived at these few non-exertional

---

[8] The ALJ noted that these four functional areas are often called the "paragraph B" criteria. He also analyzed whether the criteria for "paragraph C" were met. (ECF No. 10 at 27). Reviewing the evidence in the SSA record, he determined that the evidence failed to establish that the paragraph C criteria were met because there was no evidence of anything that "diminishe[d] the symptoms and signs of [a] mental disorder" or impacted Plaintiff's ability to adapt to changes to his daily life. (*Id.*).

limitations after considering Plaintiff's testimony, all relevant medical opinions, prior administrative medical findings, and any other relevant evidence in the SSA Record. (*Id.* at 28–29).

The ALJ concluded that the medical evidence in the record confirmed Plaintiff's history of seizures, but did not support the frequency, severity, and number of seizures Plaintiff purportedly suffered. (*Id.* at 29–30). He noted that Plaintiff testified that his seizures "significantly and adversely affected" his life, but this was inconsistent with a document he filled out during an April 2022 hospital visit shortly after his first seizure a month prior, in which he stated his seizures "only somewhat affected his quality of life" and were "only a little severe." (*Id.*). And the results from a battery of tests conducted between April 2022 and November 2023 were "unremarkable" and "revealed no abnormal findings." (*Id.*).

The ALJ also discussed the impact medication had on Plaintiff's symptoms, explaining that it was "generally effective" at preventing Plaintiff's seizures because no documented seizures occurred while Plaintiff took his prescribed medication. (*Id.* at 30). Between July 2022 and October 2023, Plaintiff only experienced three seizures: one in July 2022 and two in October 2023. (*Id.*). Plaintiff conceded that all three occurred after he stopped taking medication. (*Id.*). The seizure in July 2022 occurred after Plaintiff stopped his course of Oxcarbazepine, and his seizures in October 2023 occurred roughly ten months after he stopped a stronger course of Oxcarbazepine. (*Id.*).

Finally, the ALJ highlighted the consultive examination and report done by Dr. Healy, who found no abnormal physical findings. (*Id.* at 31). Dr. Healy also concluded that Plaintiff would have "no physical limitations" if his seizures were under control. (*Id.*). The ALJ found that finding to be consistent with the medical evidence in the record, and thus decided not to include any physical limitations in the RFC. But the ALJ also recognized that Plaintiff's epilepsy was a "severe impairment that would have some impact on [his] ability to function in a work setting," (*id.)*, and thus, included certain non-exertional limitations in the RFC. (*Id.* at 28, 31).

Finally, at step five, the ALJ determined that Plaintiff was not disabled because there were jobs he could perform when accounting for his RFC, age, education, and work experience. (*Id.* at 32). The ALJ highlighted the vocational expert's testimony at the January 2024 hearing that Plaintiff could perform roles such as a Marker, Routing Clerk, and Mail Sorter. (*Id.* at 32–33). Because Plaintiff could adjust to working in those roles, Plaintiff was not disabled. (*Id.*).

## IV.   DISCUSSION

Plaintiff makes several arguments that challenge (1) the ALJ's determination that Plaintiff did not have a severe mental impairment (at steps two and three); and (2) the ALJ's RFC determination (at steps four and five). (ECF Nos. 14 at 8–18; 20 at 2–4). As explained below, the Court finds that substantial evidence supports the ALJ's determinations and that no legal error occurred.

**A. Substantial Evidence Supports the ALJ's Determination that Plaintiff's Mental Impairments Were Not Severe.**

Plaintiff makes several arguments to challenge the ALJ's determination (at steps two and three) that he had no severe mental impairments, despite his diagnosis of adjustment disorder with depressed and anxious mood. (ECF No. 14 at 8–14). First, Plaintiff argues that the ALJ's determination was not supported by substantial evidence because Dr. Goldstein's opinion contradicted it. (ECF Nos. 14 at 8–10; 20 at 2–3). According to Plaintiff, Dr. Goldstein's assessment "found severe mental limitations," which required a finding that his mental impairments were severe. (ECF Nos. 14 at 8–10; 20 at 2–3). Second, Plaintiff argues that the ALJ incorrectly found unpersuasive the opinion from Dr. Lieber-Diaz that concluded Plaintiff had moderate mental limitations. (ECF Nos. 14 at 11–12; 20 at 3). And third, Plaintiff argues that the ALJ failed to "specifically account for a combination of mild mental impairments" in addition to any severe ones, by not including any mental restrictions in his RFC determination. (ECF Nos. 14 at 13–14; 20 at 3).

The Commissioner argues in opposition that the ALJ's determination was supported by substantial evidence because Drs. Miceli and Goldstein opined that Plaintiff only had, at most, mild limitations in the four broad areas of mental functioning that needed to be considered. (ECF No. 18 at 12–16). He also argues that the Court correctly found Dr. Lieber-Diaz's opinion unpersuasive because it was inconsistent with the opinions of Drs. Miceli and Goldstein, and the presence of an impairment is not sufficient to render it a severe one. (*Id.* at 17–18). Finally, the Commissioner argues that the ALJ explicitly accounted for a combination of

11

Plaintiff's mental impairments and correctly determined that no mental limitations were warranted. (*Id.* at 18–21).

As discussed below, each of Plaintiff's arguments is unavailing.

### 1. **Dr. Goldstein's opinion supports the ALJ's determination.**

Plaintiff argues that the ALJ's determination was not supported by substantial evidence because it was contradicted by Dr. Goldstein's opinion, which "found severe mental limitations." (ECF Nos. 14 at 8–10; 20 at 2–3). But this argument is contradicted by the administrative record.

Dr. Goldstein did not find "severe mental limitations," as Plaintiff asserts. (ECF No. 14 at 10). The word "severe" is never even mentioned in the entire report. (ECF No. 10-1 at 251–55). Instead, Dr. Goldstein repeatedly described Plaintiff's limitations as "mild," which he used no less than eight times in his report.[9] Indeed, Dr. Goldstein found that Plaintiff's "present evaluation appear[s] to be consistent with psychiatric problems but, in itself, this does not appear to be significant enough to interfere with [his] ability to function on a daily basis." (ECF No. 10-1 at 254). Thus, based on Dr. Goldstein's statements, the ALJ was not required to find that Plaintiff had a severe mental impairment. *See Bruzzese v. Comm'r of Soc. Sec.*, 23 Civ. 171 (GS), 2024 WL 4345728, at *18 (S.D.N.Y. Sept. 20, 2024) ("Where an ALJ finds the degree of limitation to be mild or none, then an ALJ will find that the impairment is not severe." (internal quotation marks omitted)).

---

[9] Goldstein's "medical source statement" plainly stated there was "mild evidence of limitation" for a host of areas like "understanding, remembering, or applying simple directions and instructions," "interacting with supervisors, coworkers, and the public," and "sustaining concentration and performing tasks at a consistent pace." (ECF No. 10-1 at 253–54).

### 2. **Plaintiff provides no basis for the Court to second-guess the ALJ's findings about Dr. Lieber-Diaz's opinion.**

Plaintiff also argues that the ALJ incorrectly found unpersuasive the opinion from Dr. Lieber-Diaz that concluded Plaintiff had moderate mental limitations. (ECF Nos. 14 at 11–12; 20 at 3). Because Dr. Lieber-Diaz considered the reports from Drs. Miceli and Goldstein in reaching her conclusion, Plaintiff argues that it was wrong for the ALJ to conclude that her opinion was inconsistent with those two reports. (ECF No. 14 at 12). In essence, Plaintiff argues that the ALJ erred because other evidence in the record (namely, Dr. Lieber-Diaz's opinion) supports a different outcome. But a reviewing court cannot engage in reweighing evidence that may be susceptible to more than one interpretation, which is precisely what Plaintiff seeks here. *See Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626, 642 (S.D.N.Y. 2019) ("The reviewing court's task is limited to determining whether substantial evidence exists to support the ALJ's fact-finding; it may not reweigh that evidence or substitute its judgment for that of the ALJ where the evidence is susceptible of more than [one] interpretation.").

In reaching his conclusions, the ALJ went through each functional area of mental functioning and detailed the findings from Plaintiff's psychiatric consultative examinations with Drs. Miceli and Goldstein, in January and May 2023, respectively. (ECF No. 10 at 25–26). Those reports consistently found only mild limitations, at most, in each of the four functional areas of Plaintiff's mental functioning. (ECF No. 10-1 at 143–44, 253–54). For example, Dr. Miceli found that Plaintiff had a "mild limitation" in three of the functional areas: (1) "understanding,

13

remembering, or applying complex directions and instructions," (2) "interacting adequately with supervisors, coworkers," and (3) regulating emotion, controlling behavior, and maintaining well-being." (*Id.* at 143–44). And she found Plaintiff had "[n]o limitation" in the one remaining functional area: "sustaining concentration and performing a task at a consistent pace." (*Id.*). Dr. Goldstein found similar limitations. Although he differed slightly from Dr. Miceli and found "mild evidence of [a] limitation" in the functional area of "sustaining concentration and performing tasks at a consistent pace," (*id.* at 254), he found that Plaintiff had "mild evidence of [a] limitation" in the other three functional areas. (*Id.* at 253–54).

In evaluating Dr. Miceli's and Dr. Goldstein's opinions, the ALJ found each doctor's report to be persuasive (individually), supported by their own respective examination and findings, and consistent with each other's report. (ECF No. 10 at 27–28). The ALJ also found that both reports were consistent with the conclusion of the reviewing psychologist Dr. Blackwell, who found Plaintiff's limitations were no more than mild ones. (*Id.* at 28). And the ALJ further noted that the evidence supports these conclusions "in that the claimant has neither received in-patient or outpatient mental health treatment, and there is no evidence to suggest that the claimant's mental health is impacting his daily functioning." (*Id.*) Thus, the ALJ supported his findings with three medical opinions, including prior administrative findings, all of which found Plaintiff's mental impairment non-severe.

In taking issue with the ALJ's conclusion, Plaintiff points to Dr. Leiber-Diaz's opinion, one of the consulting psychologists at the reconsideration level, who

concluded that Plaintiff had moderate limitations in two of the functional areas of mental functioning: (1) his ability to "[u]nderstand, remember, or apply information," and (2) his ability to "[c]oncentrate, persist, or maintain pace." (ECF No. 14 at 11–12). But pointing to one medical opinion that reaches a different conclusion does not provide a basis to second-guess the ALJ's conclusions. As noted above, this Court's task is limited to determining whether substantial evidence supports the ALJ's fact-finding; it may not reweigh that evidence or substitute its judgment for that of the ALJ where the evidence is susceptible to more than one interpretation. Thus, this Court will not reweigh the evidence contained in Dr. Lieber-Diaz's report, which the ALJ considered and found unpersuasive. The ALJ explained that her opinion was inconsistent with the record and the findings of Drs. Miceli and Goldstein, both of whom found no more than mild mental limitations. *Richardson*, 2024 WL 1363451, at \*7 (refusing to reweigh medical opinion on review and concluding that ALJ "permissibly found" medical opinion "inconsistent" with administrative record (internal quotation marks omitted)); *Blanford v. Dudek*, 24-2097-cv, 2025 WL 1288082, at \*2 (2d Cir. May 2, 2025) (summary order) (concluding ALJ made permissible finding when it determined medical opinion was unpersuasive because it was "not consistent with or well supported by the record" (internal quotation marks omitted)). And other than the mere existence of a medical opinion that reaches a different conclusion, Plaintiff provides no basis for this Court to second-guess the ALJ's weighing of medical evidence.

### 3. The ALJ did not fail to consider the combined impact of Plaintiff's severe and non-severe impairments.

Plaintiff argues that the ALJ necessarily failed to consider the combined impact of Plaintiff's severe and non-severe impairments, because the ALJ "did not include any mental restrictions" in the RFC determination. (ECF No. 14 at 14). This argument fails for at least three reasons.

First, as the Commissioner correctly identifies in his brief, the ALJ's assessment of the severity of mental impairments under the paragraph B criteria at steps two and three is separate and apart from the ALJ's RFC determination at step four. *See Serrano v. Comm'r of Soc. Sec.*, 22 Civ. 5627 (JPO) (SLC), 2023 WL 6049651, at *17 (S.D.N.Y. July 24, 2023) ("[T]he ALJ was not required to consider, in determining [plaintiff's] RFC for use in steps four and five, the paragraph B criteria for determining the degree of functional limitation at step three."). And the ALJ acknowledged that distinction explicitly in his decision, stating that the "limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (ECF No. 10 at 26–27).

Second, contrary to Plaintiff's assertion, the ALJ did consider the potential impact of Plaintiff's non-severe mental impairments, both as part of his analysis of the severity of Plaintiff's mental impairments and his RFC assessment. After analyzing Plaintiff's mental limitations under the "paragraph B" criteria, the ALJ concluded that Plaintiff's mental impairments were non-severe. (ECF No. 10 at 26). He then explained that his RFC assessment "reflects the degree of limitation the

16

undersigned has found in the paragraph B mental function analysis" (*id.* at 27) and that he "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." (*Id.* at 28). That is sufficient to satisfy the requirements of steps two and three; "[a]n ALJ need not recite every piece of evidence that contributed to the decision." *Cichocki*, 729 F.3d at 178 n.3; *see Foster v. O'Malley*, 7:22-cv-10145-KMK-VR, 2024 WL 3813805, at *5 (S.D.N.Y. July 31, 2024) (finding ALJ properly proceeded through steps two and three because ALJ stated in decision that it considered all of plaintiff's nonsevere impairments).

Third, an ALJ is not required to impose any mental limitations in its RFC determination if it finds only mild limitations at step two. *See DuBois v. Comm'r of Soc. Sec.*, 20-CV-8422 (BCM), 2022 WL 845751, at *7 (S.D.N.Y. Mar. 21, 2022) (finding ALJ's decision not to include mental health restrictions in RFC after determining plaintiff had only nonsevere mental impairments was not erroneous). As discussed above, substantial evidence supports the ALJ's finding that Plaintiff had at most a mild mental limitation at step two. The psychiatric evaluations done by Drs. Miceli and Goldstein each separately resulted in a medical opinion that Plaintiff had only mild limitations in each of the four broad functional areas considered. (ECF No. 10-1 at 141–45, 251–55). And they each concluded that any "psychiatric problems" Plaintiff suffered from were not "significant enough to interfere with [his] ability to function on a daily basis." (*Id.* at 144, 254). Dr. Blackwell's separate review reached a similar conclusion about Plaintiff's mild

mental limitations. (ECF No. 10 at 28). And Plaintiff "denied any in-patient or out-patient mental health treatment." (*Id.*). Thus, the ALJ did not err when he decided not to include mental limitations in his RFC determination. *See Suzanne H. v. Comm'r of Soc. Sec.*, 1:20-CV-0684 (WBC), 2021 WL 5309718, at *6 (W.D.N.Y. Nov. 15, 2021) (upholding ALJ's RFC determination "absent mental limitations" because ALJ found plaintiff's mental impairments were not severe after finding only "minimal limitations" in mental functioning); *Katherine R. v. Comm'r of Soc. Sec.*, 1:20-CV-01055-MJR, 2021 WL 5596416, at *7 (W.D.N.Y. Nov. 30, 2021) (similar).

## B. <u>Substantial Evidence Supports the ALJ's RFC Determination.</u>

Plaintiff also makes several arguments to challenge the ALJ's RFC determination. First, he argues that the ALJ failed to cite any specific medical evidence to support his RFC determination, including the added non-exertional limitations. (ECF No. 14 at 15–16). Second, Plaintiff argues that the ALJ should have obtained additional evidence specific to those constraints. (*Id.* at 16–17). And third, Plaintiff argues that the RFC determination failed to carefully consider Plaintiff's own testimony at the January 2024 hearing because it only considered Plaintiff's major seizures, not his less severe ones. (*Id.* at 17–18).

In opposition, the Commissioner argues that the RFC determination, including its non-exertional limitations, was supported by substantial evidence because the ALJ detailed the information he relied on in Dr. Healy's opinion and the medical record, and reasonably included non-exertional limitations to account for Plaintiff's history of seizures. (ECF No. 18 at 22–27). The Commissioner also

argues that the ALJ was not required to seek more evidence about the severity of Plaintiff's seizures, because there were no obvious gaps in the record that would require it. (*Id.* at 26-27). And contrary to Plaintiff's assertion, the Commissioner argues that the ALJ did consider Plaintiff's testimony when reaching his RFC determination. (*Id.* at 25-26).

As discussed below, the Court finds that substantial evidence supports the ALJ's RFC determination and that each of Plaintiff's arguments fail to demonstrate otherwise.

 1. **Substantial evidence supports the ALJ's RFC determination, including the non-exertional limitations.**

Plaintiff argues that, in finding that Plaintiff's focal epilepsy was a severe impairment, the ALJ "failed to properly evaluate the medical and non-medical evidence to determine that Mr. DeJesus' seizures result in an [RFC] to perform all work activities so long as it does not involve work performed at unprotected heights or around dangerous machinery and no work that requires operating a motor vehicle as a condition of employment." (ECF No. 14 at 15). Although Plaintiff asserts that the ALJ erred by "not citing to any specific medical facts nor even persuasive non-medical evidence" (*id.* at 16) to support his RFC determination, the record shows otherwise.

First, the ALJ's opinion details specific medical facts and non-medical evidence from Plaintiff's treatment records, history of seizures, ER visits, and Plaintiff's own statements as part of his RFC determination. For example, the ALJ detailed Plaintiff's history of ER visits, which confirmed Plaintiff's history of

19

seizures. (ECF No. 10 at 29-30). But the ALJ noted that the evidence also showed that Plaintiff failed to receive treatment for his seizures for almost a year, which did not support the frequency and number of seizures Plaintiff purported to have. (ECF No. 10 at 30). The ALJ further detailed Plaintiff's treatment records, in which Plaintiff underwent various diagnostic testing, including EEGS, CTs and MRIs. (*Id.* at 30–31). But the ALJ noted that most of these tests revealed no abnormal findings throughout the relevant period. (*Id.*). The ALJ also explained that the record showed that "medication was generally effective in preventing [Plaintiff's] seizures" and that his only reported seizures came at points where he admitted to stopping his medication. (*Id.* at 30). Plaintiff even had a stretch of roughly ten months when he did not suffer a seizure despite stopping his medication. (*Id.* at 30). Thus, the ALJ relied on a variety of medical facts and evidence to support his RFC determination that no physical limitations were necessary.

Second, the ALJ also relied on Dr. Healy's physical consultative examination of Plaintiff on June 19, 2023, in which Dr. Healy opined that if Plaintiff's seizures were under control, he would have no physical limitations. (ECF No. 10-1 at 259). The ALJ reasonably found Dr. Healy's opinion persuasive. (ECF No. 10 at 31). He noted that Dr. Healy's conclusion was supported by his own testing and examination, which found overall normal physical findings. (*Id.*). And he also explained that Dr. Healy's opinion was consistent with the overall record, including other physical examinations conducted at Mount Sinai, which also "fail[ed] to note any physical limitations" experienced by Plaintiff. (ECF No. 10 at 31) (citing ECF

20

No. 10-2 at 3). Thus, substantial evidence supports the ALJ's decision not to include any physical limitations in the RFC. (*Id.*).

Although Plaintiff also appears to take issue with the non-exertional limitations the ALJ added to the RFC, the ALJ committed no error in doing so. *See, e.g., Mary M. v. Comm'r of Soc. Sec.*, 1:22-CV-00939-CJS, 2024 WL 1045211, at *10–11 (W.D.N.Y. Mar. 11, 2024) (denying plaintiff's motion for judgment on pleadings after concluding ALJ's RFC with non-exertional limits for plaintiff's seizures was not erroneous).[10] As the ALJ explained, although he did not limit the Plaintiff to any physical limitation, he nevertheless "considered the [Plaintiff's] testimony and history of seizures when considering the non-exertional limitations referenced in the above RFC." (ECF No. 10 at 31). The ALJ noted that the "treatment records, claimant's history of seizures, ER visits, and even the claimant's statements, perhaps not to the severity alleged, nevertheless support a conclusion that the claimant's epilepsy is a severe impairment that would have some impact on the claimant's ability to function in a work setting." (*Id.* at 31). As a result, the ALJ added the non-exertional limitations that Plaintiff "cannot work at unprotected heights or around dangerous machinery" and "cannot be required to operate a motor vehicle as a condition of employment." (*Id.* at 28).

---

[10] *See also Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (finding ALJ "committed no error" when it deviated from medical opinion's recommendation in determining RFC); *Rodriguez v. Kijakazi*, 21 Civ. 2358 (JCM), 2022 WL 3211684, at *14–15 (finding ALJ's decision to give plaintiff "benefit of the doubt" and add limitations to RFC based on plaintiff's frozen shoulder and other complaints was not erroneous); *Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) (finding ALJ inclusion of more generous off-task time limitation in RFC determination, despite lack of limitation in medical opinions, did not require remand).

It is true that ALJ's sometimes point to a specific medical opinion to identify limitations for an RFC. *See Angelo S. v. Comm'r of Soc. Sec.*, 1:24-CV-00072 EAW, 2025 WL 2774842, at *4 (W.D.N.Y. Sept. 30, 2025) (noting ALJ "adopted" doctor's opinion identifying specific environmental limitations of "unprotected heights, dangerous machinery, or operation of motor vehicles," due to Plaintiff's seizures); *Ranallo v. Comm'r of Soc. Sec.*, 1:18-CV-00424 EAW, 2019 WL 2462622, at *4 (W.D.N.Y. June 13, 2019) (similar). But that is not required; an ALJ can implement a limitation into the RFC determination even where no medical opinion suggests one. *See, e.g., McMillian v. Comm'r of Soc. Sec.*, 1:20-CV-7626 (KHP), 2022 WL 457400, at *4 (S.D.N.Y. Feb. 15, 2022) ("While no medical reports suggested a need to limit Plaintiff's physical RFC with her additional maladies, nevertheless, the ALJ provided for additional limitations in light of Plaintiff's allergies, and asthma."). Again here, the ALJ's non-exertional limitations were *more* restrictive than the medical opinions suggested, precisely because the ALJ credited some of Plaintiff's testimony about the impact his condition might have in a work setting. (ECF No. 10 at 31).

### 2. No obvious gaps in the record exist that would require the ALJ to seek more evidence.

Plaintiff also argues that because the ALJ "implicitly rejected every medical opinion in the record that addresses [Plaintiff's] seizures," the ALJ was obligated to develop the record "by requesting an opinion regarding the severity of this condition from a treating physician, a consultative examiner, or even a non-

examining medical expert upon receipt of all the records." (ECF. No. 14 at 16). This argument also fails.

First, the ALJ did not reject every medical opinion that addresses Plaintiff's seizures, implicitly or otherwise. Instead, he specifically found Dr. Healy's opinion generally persuasive, which included a diagnosis of seizure disorder, and stated that if Plaintiff's seizures were under control, he would have no physical limitations. (ECF No. 10 at 31; *see also* ECF No. 10-1 at 259). The ALJ also referred to prior administrative findings and noted that those determinations "do indicate that the claimant's [seizure] impairments can cause some of the symptoms alleged by the claimant" and found those portions of the opinions "to be persuasive and consistent with the evidence of the record as described above." (ECF No. 10 at 31).

Second, Plaintiff points to no obvious gaps in the administrative record that would warrant the ALJ's need to develop the record, nor does Plaintiff make any real argument about Plaintiff's medical history being incomplete. In fact, during the ALJ hearing, Plaintiff's counsel agreed that the record was complete. (ECF No. 10 at 41).[11] Whether to seek more evidence is a matter within an ALJ's discretion. *Christopher C. v. Comm'r of Soc. Sec.*, 20-cv-01774, 2022 WL 16797970, at *5 (W.D.N.Y. Nov. 8, 2022) ("The decision of whether or not to [further develop the record] is within the discretion of the Commissioner."). And "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a

---

[11] At the ALJ hearing, Plaintiff's counsel stated that the only records missing from the administrative record were some records of treatment "up until November 0f 2023," but there was "nothing else" to include. (ECF No. 10 at 41). When the ALJ asked if that would complete the administrative record, Plaintiff's attorney answered "Yes." (*Id.*).

complete medical history, the ALJ is under no obligation to seek additional information." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks omitted); *see also Villalobo v. Saul,* No. 19 Civ. 11560 (CS)(JCM), 2021 WL 830034, at *19 (S.D.N.Y. Feb. 9, 2021) ("[A]n ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need for it." (quoting *Tankisi v. Comm'r of Soc. Sec.,* 521 F. App'x 29, 32 (2d Cir. 2013))).

### 3. The ALJ did consider Plaintiff's testimony in his RFC determination.

Finally, Plaintiff argues that the ALJ failed to consider Plaintiff's testimony when making his RFC determination, because the ALJ "focuse[d] only on the impact of [Plaintiff's] major seizures" and never mentioned Plaintiff's testimony that he "also has seizures that did not involve loss of consciousness." (ECF No. 14 at 17–18). But this is contradicted by the plain text of the ALJ's decision, which does refer to Plaintiff's testimony from the January 2024 hearing explicitly. (ECF No. 10 at 29).

The ALJ began by noting that, during the hearing, Plaintiff "testified that he is not currently working" and that he last worked in April 2022 "but stopped after experiencing a seizure." (*Id.*). The ALJ further noted that "[s]ince suffering the first seizure in 2022, [Plaintiff] testified that he has suffered from multiple seizures" and that "some of these seizures resulted in hospitalization while some did not." (*Id.*; *see also id.* at 49 (Hearing Transcript)). During the hearing, Plaintiff testified that

24

serious seizures caused him to lose consciousness, required hospitalization, and made him feel physically weak afterward. (*Id.*).[12]

But at the hearing, the ALJ also specifically questioned Plaintiff "about what happens during a seizure when you don't black out. What do you experience when that occurs?" (ECF No. 10 at 46-47). And the ALJ's opinion makes specific reference to Plaintiff's response: "[h]e further stated that after experiencing the seizure he needs to lay down and get his bearings taking him anywhere from 10 minutes to ½ hour." (ECF No. 10 at 20). Thus, this portion of the ALJ's opinion fairly summarizes Plaintiff's hearing testimony, in which he testified that his less severe seizures did not cause any loss of consciousness or require a visit to the hospital, but only caused him to feel "a weird level of anxiety that kind of starts from a valley and comes all the way up." (*Id.* at 47). He explained that during that experience he would "become inaudible," "just sit there," and "kind of blank out" for a few minutes. (*Id.* at 47). And to recover from the effects of the less severe seizures, he would lie down for roughly 10 to 30 minutes to regain his composure. (*Id.* at 50).

Thus, the ALJ reasonably considered Plaintiff's testimony about the impact of his seizures—both those that required hospitalization and those that did not—and found that the record evidence did not support the intensity, frequency, and severity of seizures that he alleged. (*Id.* at 29–30).

---

[12] In describing his recovery from a serious seizure, Plaintiff testified that it "feels like [he] got beat up or got hit by a car or a bus or something." (ECF No. 10 at 49).

25

## CONCLUSION

For the reasons above, I respectfully recommend that Plaintiff's motion for judgment on the pleadings be DENIED.

**SO ORDERED.**

DATED:      White Plains, New York
            February 3, 2026

VICTORIA REZNIK
United States Magistrate Judge

## NOTICE

**Pursuant to 28 U.S.C. § 636(b)(l) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from service of this Report and Recommendation to file written objections. Fed. R. Civ. P. 6(a). A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any responses to such objections, shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Cathy Seibel, United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.**

**FAILURE TO TIMELY FILE OBJECTIONS TO THIS REPORT AND RECOMMENDATION WILL PRECLUDE LATER APPELLATE REVIEW OF**

**ANY ORDER OF JUDGMENT TO BE ENTERED.** *See Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008).

Any request for an extension of time for filing objections or responses to objections must be directed to Judge Seibel, and not to the undersigned.