UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

VICTOR DEJESUS,

                                    Plaintiff,

        - against -

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

-------------------------------------------------------------x

**OPINION & ORDER**

No. 24-CV-9435 (CS) (VR)

<u>Appearances</u>:

Louis R. Burko
Severance, Burko, Spalter, Masone & Laurette, P.C.
Brooklyn, New York
*Counsel for Plaintiff*

<u>Seibel, J.</u>

        Before the Court are the objections of Plaintiff Victor Dejesus, (ECF No. 23 ("Obj.")), to

the Report and Recommendation of United States Magistrate Judge Victoria Reznik, (ECF No.

22 (the "R&R")), recommending that this Court deny Plaintiff's motion for judgment on the

pleadings pursuant to Federal Rule of Civil Procedure 12(c), (ECF No. 14).  For the reasons

discussed below, the Court adopts the R&R in part and rejects it in part, and remands to the

Commissioner for reconsideration.

## I.    <u>BACKGROUND</u>

        The Court assumes the parties' familiarity with the facts in Administrative Record

("A.R.").  As Judge Reznik noted, Plaintiff provided in his motion papers a summary of the

testimonial, medical and vocational evidence in the A.R., which the Commissioner adopted in its

brief.  (R&R at 3; *see* ECF No. 14 at 1-7; ECF No. 18 at 1.)  Based on its own independent

review of the A.R., the Court finds this summary to be largely comprehensive and accurate, and also adopts it as Judge Reznik did.  (R&R at 3.)  The Court will refer to facts relevant to Plaintiff's objections as it discusses them.  The A.R. was supplied to the Court under seal and is found at ECF No. 10.  Citations to the A.R. will use the internal pagination at the bottom right corner of the page.  The decision of the Administrative Law Judge ("ALJ") from which Plaintiff appeals is found at A.R. 17-29.  Citations to "ALJD" are to the ALJ's decision and use the internal pagination of that decision.  The Court also adopts Judge Reznik's summary of the ALJ's decision.  (*Id.* at 7-10.)

## II.      STANDARDS OF REVIEW

### A.      Review of a Report and Recommendation

A district court reviewing a report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  "If a party fails to properly object to the R&R, the district judge reviews the R&R only for clear error."  *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 359 (2d Cir. 2025).[1]  "A district court may review a report and recommendation for clear error when a party's objections are nonspecific or merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition."  *Knight v. City of N.Y.*, 164 F.4th 173, 177 (2d Cir. 2026) (*per curiam*).  This principle does not apply, however, when a party "[takes] issue with a specific legal conclusion in the report and recommendation."  *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120-21 (2d Cir. 2022).  To make a timely objection, the party "must lodge a specific objection to some specific aspect" of the

---

[1] Unless otherwise indicated, case quotations in this Opinion omit internal quotation marks, citations, footnotes and alterations.

report and recommendation.  *Nambiar*, 158 F.4th at 361; *see* Fed. R. Civ. P. 72(b)(2).  The court

must review *de novo* any portion of the report to which a specific objection is made.  28 U.S.C.

§ 636(b)(1)(C); *see Miller*, 43 F.4th at 120.  *De novo* review is necessary even where a litigant

repeats an argument raised before the magistrate judge.  *Knight*, 164 F.4th at 177; *see Nambiar*,

158 F.4th at 361 ("[T]he objection not only may, but often must, repeat arguments that were

previously raised.").  In conducting *de novo* review, however, courts do not consider "new

arguments and factual assertions" raised for the first time in the objection.  *Piligian v. Icahn Sch.

of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020).  "Failure to timely object

may operate as a forfeiture of further judicial review of the magistrate judge's decision."

*Nambiar*, 158 F.4th at 359.

> **B.**      <u>**Review of a Social Security Claim**</u>

In reviewing a Social Security claim, the reviewing court "conduct[s] a plenary review of

the administrative record to determine if there is substantial evidence, considering the record as a

whole, to support the Commissioner's decision and if the correct legal standards have been

applied."  *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  A reviewing court does not

determine *de novo* whether a claimant is disabled; instead, a court may overturn the

determination of an ALJ only if it is "based upon legal error" or "not supported by substantial

evidence."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

"Under the substantial-evidence standard, a court looks to an existing administrative

record and asks whether it contains sufficient evidence to support the agency's factual

determinations."  *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019).  "Substantial evidence is 'more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'"  *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (*per*

*curiam*) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Under this "very deferential standard of review," the ALJ's "determination must be upheld if it is rational and supported by the record, even if the evidence is susceptible to more than one rational interpretation." *Nunez v. Comm'r of Soc. Sec.*, 164 F.4th 60, 70 (2d Cir. 2025).  Still, the ALJ must "set forth the crucial factors underlying their factual findings and determinations with sufficient specificity so that the reviewing court can decide whether the determination is supported by substantial evidence." *Id.* In considering whether substantial evidence supports the ALJ's decision, the reviewing court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).

## III.   DISCUSSION

Plaintiff filed his objections to the R&R on February 12, 2026.  (ECF No. 23.)  On March 10, 2026, I ordered the Commissioner to file his response, if any, by March 24, 2026.  (ECF No. 24.)  No response was filed.

A claimant is disabled under the Social Security Act if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see Nunez*, 164 F.4th at 67.  To assess a claimant's disability status, the Social Security Administration ("SSA") has promulgated regulations setting forth a sequential five-step process.  *See Nunez*, 164 F.4th at 67.  Under that process, the SSA asks:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in

4

the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Estrella*, 925 F.3d at 94; *see* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). "At steps one through four of this analysis, the claimant bears the burden of proof; but at step five, the burden shifts to the Commissioner." *Colgan v. Kijakazi*, 22 F.4th 353, 358 (2d Cir. 2022). "If at any step a finding of disability or nondisability can be made, the Commissioner will not review the claim further." *Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022).

Plaintiff's objections concern the ALJ's severity analysis at steps two and three and the residual functional capacity ("RFC") analysis at step four. The ALJ determined that Plaintiff's epilepsy was severe but his adjustment disorder with depressed and anxious mood was not. (ALJD at 3-4.) The ALJ then determined Plaintiff to have the RFC "to perform a full range of work at all exertional levels" but with certain non-exertional limitations related to his epilepsy. (*Id.* at 8.)[2] Plaintiff objects to Judge Reznik's recommendation that I find that substantial evidence supported the ALJ's decision at steps two and three that Plaintiff's mental impairment was not severe. (Obj. at 1.) Plaintiff also objects to Judge Reznik's recommendation that I conclude that the ALJ properly considered the combined impact of Plaintiff's severe and non-severe impairments when determining Plaintiff's RFC at step four. (*Id.* at 7.) I agree with Judge Reznik that the ALJ committed no error in steps two and three, but I find that at step four the ALJ committed a procedural error requiring remand to the Commissioner.

---

[2] The non-exertional limitations were that Plaintiff "[c]annot work at unprotected heights or around dangerous machinery" and "cannot be required to operate a motor vehicle as a condition of employment." (*Id.*)

A.      <u>**Severity**</u>

Plaintiff objects to Judge Reznik's recommendation that I find that the ALJ properly determined that Plaintiff's mental impairments were not severe.

"An ALJ's decision at step two that an impairment is not severe must be supported by substantial evidence in the record as a whole." *Suzanne H. v. Comm'r of Soc. Sec.*, No. 20-CV-684, 2021 WL 5309718, at *3 (W.D.N.Y. Nov. 15, 2021). In evaluating the severity of mental impairments, an ALJ "must rate the degree of functional limitations in the areas of: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself." *Id.*; *see* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). The SSA uses a five-point scale (none, mild, moderate, marked, and extreme) to conduct this rating in each of the four functional areas. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). If a mental impairment is rated as none or mild, it is deemed "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1); *see Schafenberg v. Saul*, 858 F. App'x 455, 456 (2d Cir. 2021) (summary order).

Relatedly, at step three, an ALJ determines whether an impairment, or combination of impairments, meets the criteria of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, which are "presumed severe enough to render an individual disabled." *Foster v. O'Malley*, No. 22-CV-10145, 2024 WL 3813805, at *3 & n.7 (S.D.N.Y. July 31, 2024), *report and recommendation adopted*, 2024 WL 4117162 (S.D.N.Y. Sept. 9, 2024). In doing so, an ALJ may consider so-called "paragraph B" and "paragraph C" criteria. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00. "Paragraph B" criteria are based on the functional limitations and their corresponding rating considered in step two. *See id.* § 12.00(A)(2)(b). "Paragraph C" criteria

6

consider evidence showing that the claimant (1) relies on medical treatment, mental health therapy, or other support to address their symptoms and (2) has reached only "marginal adjustment" to the requirements of daily life. *See id.* § 12.00(G)(2). The "paragraph C" criteria can serve as an alternative to the "paragraph B" criteria and "are used to evaluate mental disorders that are serious and persistent, recognizing that mental health interventions may control the more obvious symptoms and signs of a claimant's mental disorder." *Marcano v. Comm'r of Soc. Sec.*, No. 20-CV-4230, 2021 WL 5315703, at *14 (S.D.N.Y. Nov. 16, 2021), *report and recommendation adopted*, 2022 WL 253083 (S.D.N.Y. Jan. 26, 2022). If the condition at issue does not meet the requirements of a listed impairment, the analysis proceeds to step four. *See Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003).

The ALJ went through a detailed analysis under this rubric and determined that Plaintiff's mental impairment of adjustment disorder with depressed and anxious mood is not severe. (ALJD at 4-8.) In reaching his conclusion, the ALJ relied on records from Drs. Miceli and Goldstein, who conducted psychiatric consultive examinations of Plaintiff in January 2023 and May 2023, respectively. (*See id.*) Their evaluations included results from their testing and observations as to Plaintiff's demeanor, presentation, thought process, and insights, among other areas, as well as Plaintiff's self-reported habits, social and familial interactions, and symptoms. (*See* A.R. 479-484, 589-594.) For example, Plaintiff could recall three objects immediately and again after a delay during his exam with Dr. Miceli, but could only recall one object after a delay during his exam with Dr. Goldstein. (*Id.* at 482, 592.) He also could do simple counting and calculations for both doctors, but could complete serial sevens from one hundred for Dr. Miceli only. (*Id.*) Additionally, Plaintiff stated that his "[s]ocialization with friends is fair" and his "[f]amily relationships are good" during his examination with Dr. Miceli, (*id.* at 482), but

7

reported to Dr. Goldstein a "detachment from others" that stemmed from past "exposure to trauma," (*id.* at 590-91). Plaintiff also told both doctors that he spent much of his time at home, but that he enjoyed music and watching TV. (*Id.* at 482, 592.) Dr. Goldstein described Plaintiff as having an adequate "[m]anner of relating, social skills, and overall presentation." (*Id.* at 591.) He made appropriate eye contact during both exams; he had adequate expressive and receptive language; and his affect was of "full range and appropriate to speech and thought content." (*Id.* at 481, 591.) Plaintiff also reported in both exams difficulty sleeping and depressive and anxiety-related symptoms, but he denied suicidal ideation and manic and thought-disorder symptoms. (*Id.* at 481, 590-91.) The ALJ considered all these findings and others from the doctors' reports when assessing Plaintiff's limitations in the four functional areas, or "paragraph B" criteria, which are used to determine severity at steps two and three. (ALJD at 5-6.) In doing so, the ALJ walked through each functional area, discussed the evidence corresponding to that area, and reached a reasonable conclusion as to the rating of Plaintiff's limitations within each area. (*See id.*) The ALJ then considered the "paragraph C" criteria. The ALJ stated that he reviewed the evidence and found that it "failed to establish the presence of the 'paragraph C' criteria," specifically noting that evidence for both criteria was lacking. (*Id.* at 7.) The ALJ's conclusion that Plaintiff had at most mild limitations within each functional area and that his mental impairment was non-severe was clearly supported by substantial factual evidence in these records. (*See id.* at 5-7.)

The ALJ also properly based his conclusions on the medical opinions of Drs. Miceli and Goldstein, as well as Drs. Blackwell and Lieber-Diaz, who reviewed Plaintiff's records in prior administrative proceedings. (*Id.* at 7-8.) Separate from the evidence within the doctors' records, medical opinions are "statement[s] from a medical source about what you can still do despite

8

your impairment(s) and whether you have one or more impairment-related limitations or restrictions." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Under current regulations, an ALJ "no longer needs to assign particular evidentiary weight" to the various opinions in the record. *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-502, 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Cuevas v. Comm'r of Soc. Sec.*, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022). The Commissioner considers the following five factors when considering medical opinions: (1) supportability, (2) consistency, (3) relationship with the claimant (which requires consideration of five sub-factors), (4) specialization, and (5) other factors "that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). "[S]upportability and consistency are the most important" factors that an ALJ considers when evaluating medical opinions. *Rubin v. O'Malley*, 116 F.4th 145, 148 (2d Cir. 2024). An ALJ is "required to explain [his] approach to [those] factors when considering a medical opinion, but need not expound on the consideration given to the rest of the factors." *Acosta Cuevas*, 2021 WL 363682, at *9.

Drs. Miceli and Goldstein both opined in their treatment records that Plaintiff had either mild or no limitations within the four functional areas. (A.R. at 482-83, 592-93.) In reviewing the administrative record, Dr. Blackwell also found Plaintiff's mental impairment to result in either mild or no limitations. (*Id.* at 61, 67.) The ALJ observed that these opinions were all consistent with each other and the treatment record. (ALJD at 7-8.) Dr. Lieber-Diaz found Plaintiff to be mildly limited in the second and fourth functional areas but moderately limited in the first and third areas. (A.R. at 74, 85.) Based on its tension with the treatment record and the other medical opinions, the ALJ found Dr. Lieber-Diaz's "conclusion regarding anything more than a mild limitation to be unpersuasive." (ALJD at 8.) The ALJ therefore supported his

severity analysis by properly considering the persuasiveness of each medical opinion, and his conclusions were supported by substantial evidence.

Plaintiff's arguments suggesting that the severity analysis was in error are unconvincing. First, Plaintiff contends that Judge Reznik's discussion of the ALJ's conclusion that Plaintiff's mental impairments were not severe must be rejected given that "Dr. Goldstein . . . found severe mental limitations for [Plaintiff]." (Obj. at 1-2.)  But Dr. Goldstein did not find Plaintiff's mental limitations to be severe; he found mild limitations in the four functional areas.  (A.R. at 592-93.)  Plaintiff is correct that the term "severe" has a technical meaning under SSA regulations, and that the threshold for establishing a severe impairment at step two is generally a *de minimis* standard.  (Obj. at 1-2.)  *See McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). But Plaintiff's analysis of Dr. Goldstein's findings disregards the SSA's scheme of rating the functional limitations to assess whether a mental impairment meets this threshold.  *See* 20 C.F.R. §§ 404.1520a, 416.920a.  "[W]here the claimant's alleged disability includes mental components, at steps two and three the ALJ must . . . rate the claimant's degree of functional limitation resulting from a medically determinable mental impairment in [the] four broad functional areas."  *Dollena M. v. Comm'r of Soc. Sec.*, No. 21-CV-1137, 2024 WL 957789, at *3 (W.D.N.Y. Mar. 6, 2024).  The regulations clearly state that if the degree of a claimant's functional limitations is no more than mild, "we will generally conclude that your impairment(s) is not severe."  20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).  Dr. Goldstein never opined that Plaintiff's limitations are anything more than mild, and as Judge Reznik correctly noted, never used the word "severe."[3]  And the ALJ's own analysis of the records underlying Dr. Goldstein's

---

[3] To the extent Plaintiff's objection suggests that Judge Reznik's comment about the use of "severe" in Dr. Goldstein's report erroneously referred to the colloquial meaning of the word,

opinion finding Plaintiff's limitations to be no more than mild was supported by substantial evidence.  Thus, the ALJ committed no error when considering Dr. Goldstein's report.

Second, Plaintiff disputes Judge Reznik's recommendation that the Court find that the ALJ did not err in finding Dr. Lieber-Diaz's opinion unpersuasive.  (Obj. at 3-4.)  The ALJ rejected Dr. Lieber-Diaz's opinion, which found moderate limitations in two of the functional areas, only where it conflicted with the three other medical opinions and the notes from the two psychiatric examinations of Plaintiff.  (*See* ALJD at 8.)  Where an ALJ's conclusion has reasonable support in the record "courts will defer to the ALJ's resolution regarding the appropriate weight to be afforded to various medical opinions." *Edward J. v. Kijakazi*, No. 21-CV-150, 2022 WL 4536257, at *4 (N.D.N.Y. Sept. 28, 2022) ("[B]alancing of the various medical reports and opinions in the record . . . is properly the role of the ALJ."); *see Aliyah R. H. v. Comm'r of Soc. Sec. Admin.*, No. 24-CV-9924, 2026 WL 579195, at *5 (S.D.N.Y. Mar. 2, 2026) ("Where an ALJ's decision relies on reliable evidence that a reasonable mind might accept as adequate to support a conclusion, the Court will defer to that finding under the substantial evidence standard.").  Plaintiff essentially calls for the Court to reweigh the evidence and remand simply because one medical source opinion found more severe limitations than the three others in the record.  (*See* Obj. at 3-4.)  The ALJ's decision to find the outlier unpersuasive was undoubtedly reasonable, and the Court declines to conduct a reweighing of the evidence given that his conclusion was supported by substantial evidence.

Third, Plaintiff argues that Judge Reznik should have rejected the ALJ's finding of non-severity because that conclusion was based in part on Plaintiff's lack of psychiatric

---

rather than its technical meaning, (*see* Obj. at 1-2), the Court finds this argument meritless in light of Judge Reznik's extensive discussion of the functional areas and how an ALJ is to assess severity, (*see* R&R at 13-18).

hospitalization[4] or difficulties in the activities of daily living.  (Obj. at 5-7.)  But it is not inappropriate for an ALJ to weigh these factors, among others, when considering a claim.  *See Prosa v. Comm'r of Soc. Sec.*, 749 F. Supp. 3d 444, 454-55 (S.D.N.Y. 2024) (ALJ committed no error in considering, among other factors, claimant's lack of continued mental health treatment to determine severity of mental impairments); *Anderson v. Colvin*, No. 14-CV-1038, 2017 WL 2797913, at *2 (W.D.N.Y. June 28, 2017) (no error at step two where ALJ considers claimant's activities of daily living); *Athey v. Comm'r of Soc. Sec.*, No. 13-CV-12528, 2014 WL 4537317, at *3 (E.D. Mich. Sept. 11, 2014) (same as to consideration of psychiatric hospitalizations); *Harrison v. Colvin*, No. 12-CV-87, 2013 WL 5487430, at *6 (S.D. Ind. Sept. 30, 2013) ("[I]t was not error for the ALJ to consider that [the claimant] had never received inpatient treatment or crisis management for psychiatric issues.").  In fact, the "paragraph C" criteria expressly call for a consideration of a plaintiff's mental health hospitalizations to determine if a claimant's impairments are as severe as listed impairments in the regulations.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(G)(2)(c) ("[E]vidence may document episodes . . . that have required you to be hospitalized . . . .").  Moreover, the ALJ's findings as to Plaintiff's functional limitations were not based solely on Plaintiff's hospitalization record and ability to go about daily life.  (*See* ALJD at 5-6.)  If the ALJ had weighed only these two considerations to reach his conclusion, without discussion of any medical record or opinion, remand might well be required.  But the ALJ's decision reflects careful consideration of the evidence in the record, including but not

---

[4] Plaintiff criticizes what he calls "the ALJ's focus" on Plaintiff's lack of psychiatric hospitalization, noting that institutionalization is reserved for the most seriously mentally ill. (Obj. at 5.)  The ALJ mentioned the fact that Plaintiff had not been hospitalized, but only as part of noting that Plaintiff had received no mental health treatment at all, neither inpatient nor outpatient.  (ALJD at 5-6, 7-8.)  It distorts the record to suggest that the ALJ concluded that Plaintiff's mental impairment was not severe because it had not prompted hospitalization.

limited to the lack of psychiatric hospitalization and Plaintiff's daily activities, to reach a reasoned conclusion on the severity of Plaintiff's mental impairments.

Accordingly, the ALJ's determination regarding the severity of Plaintiff's mental impairments was proper and supported by substantial evidence.  Judge Reznik thoroughly addressed Plaintiff's arguments, and the Court's *de novo* review of the ALJ decision is consistent with Judge Reznik's recommendation concerning the severity of Plaintiff's mental impairments. The Court therefore adopts it.

**B.**      **Residual Functional Capacity**

Plaintiff also objects to Judge Reznik's recommendation that the ALJ properly determined Plaintiff's RFC.

A claimant's "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," and an ALJ must consider all relevant evidence in the record to determine a claimant's RFC.  *Glessing v. Comm'r of Soc. Sec.*, No. 21-1192, 2022 WL 457243, at *1 (2d Cir. Feb. 15, 2022) (summary order); *see Spottswood v. Kijakazi*, No. 23-54, 2024 WL 89635, at *2 (2d Cir. Jan. 9, 2024) (summary order).  "To determine the RFC, the ALJ will consider the claimant's physical and mental abilities, as well as his symptomatology (including pain)."  *Glessing*, 2022 WL 457243, at *1. "A RFC determination must account for limitations imposed by both severe and nonsevere impairments."  *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order); *see* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

As Judge Reznik and the ALJ both recognized, the "analyses of impairments when determining severity at step two and when later formulating the claimant's RFC are related but distinct."  *Coulter v. Comm'r of Soc. Sec.*, 673 F. Supp. 3d 365, 375 (S.D.N.Y. 2023).  (*See* R&R

at 16; ALJD at 6-7.)  An ALJ is not required to apply the four functional area factors when determining a claimant's RFC, *Whipple v. Astrue*, 479 F. App'x 367, 369 (2d Cir. 2012) (summary order), but an RFC discussion at the latter steps of the sequential analysis "requires a more detailed assessment" than at the earlier stages, *Coulter*, 673 F. Supp. 3d at 376.  (*See* ALJD at 6-7 (acknowledging this requirement).)  Even where an ALJ finds non-severe impairments at step two, an ALJ's failure to account for those non-severe impairments at step four is legal error. *See Parker-Grose*, 462 F. App'x at 18.  Indeed, several courts within the Second Circuit have found procedural error where an ALJ finds a claimant to have mild limitations under the "paragraph B" criteria at step two and fails to discuss how those mild limitations affect the RFC analysis at step four.  *See, e.g.*, *Coulter*, 673 F. Supp. 3d at 376 ("An ALJ may properly determine that mild limitations found during the Paragraph B analysis do not translate into functional limitations within the RFC.  But an ALJ must provide a basis for understanding how they made that determination."); *Laura Anne H. v. Saul*, No. 20-CV-397, 2021 WL 4440345, at *9 (N.D.N.Y. Sept. 28, 2021) ("It is axiomatic that the ALJ is required to consider a plaintiff's mental impairments, even if not severe, in formulating the RFC."); *Gomez v. Saul*, No. 19-CV-9278, 2020 WL 8620075, at *25 (S.D.N.Y. Dec. 23, 2020) ("[E]ven if an ALJ finds that a claimant's non-severe impairments result in only 'mild' restrictions, the ALJ must analyze those restrictions in determining the claimant's RFC."), *report and recommendation adopted sub nom. Gomez v. Comm'r of Soc. Sec.*, 2021 WL 706744 (S.D.N.Y. Feb. 22, 2021); *MacDonald v. Comm'r of Soc. Sec.*, No. 17-CV-921, 2019 WL 3067275, at *3-4 (W.D.N.Y. July 11, 2019) (finding error and remanding where "the ALJ did not address those mild limitations when formulating [claimant's] RFC"); *Rookey v. Comm'r of Soc. Sec.*, No. 14-CV-914, 2015 WL

14

5709216, at *4 (N.D.N.Y. Sept. 29, 2015) ("[T]he ALJ committed legal error by failing to consider [claimant's] non-severe mental impairments in determining his RFC.").

Here, Plaintiff argues that the ALJ "did not even discuss the impact the claimant's mental impairments might have on the RFC determination." (Obj. at 8.)  I agree with Plaintiff that this was a procedural error, and I depart from the R&R on this point.  As discussed above, the ALJ found that Plaintiff's mental impairment caused mild limitations in all four functional areas, (ALJD at 5-6), but nowhere in his discussion of the Plaintiff's RFC did the ALJ discuss or account for these mild limitations, (*see id.* at 8-12).  The RFC discussion instead entirely focused on the effects of Plaintiff's epilepsy on his capacity to work, including the exertional and non-exertional limitations that his epilepsy caused.  (*Id.*)  Regardless of whether Plaintiff's non-severe mental impairment alone or in combination with his severe impairment from his epilepsy would warrant a limitation, the ALJ's RFC discussion does not make clear how he accounted for the non-severe mental impairment at step four as required under the SSA regulations.[5]

To be sure, the ALJ makes conclusory references to having considered the step two limitations in his RFC.  After discussing the "paragraph B" criteria at step two, the ALJ said that the "following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (*Id.* at 6-7.)  At the end of his step two analysis, he stated that he "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual

---

[5] If Plaintiff had no severe impairments, the ALJ would have properly determined that he was not disabled and would have not progressed to step four.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).  But where a claimant "ha[s] a severe impairment(s), . . . [the ALJ must] consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity." *Id.* §§ 404.1545(e), 416.945(e).  Plaintiff's epilepsy was severe, but did not meet the criteria at step three for a listed impairment, which required the ALJ to address step four.  (*See* ALJD at 3, 8.)

functional capacity." (*Id.* at 8.) "But such lip service is insufficient to satisfy the legal requirement that the RFC assessment include a narrative discussion describing how the evidence *supports each conclusion*." *MacDonald*, 2019 WL 3067275, at \*3 (emphasis in original); *see Coulter*, 673 F. Supp. 3d at 378 (conclusory statement that RFC analysis reflects paragraph B limitations or "similar perfunctory statements" are insufficient "where the RFC analysis is lacking"). The SSA regulations require an ALJ to expressly consider even mild limitations when determining the RFC. *See Parker-Grose*, 462 F. App'x at 18. The ALJ acknowledged that "a more detailed assessment" is needed at step four compared to step two, (ALJD at 6), but it is hard to see how he met this requirement with only conclusory references to having considered the limits in step two to determine the RFC at step four. *See Sharon J. v. Comm'r of Soc. Sec.*, 716 F. Supp. 3d 59, 65 (W.D.N.Y. 2024) ("The Court is therefore left to speculate regarding why the RFC does not include any mental limitations, and by extension whether the RFC is supported by substantial evidence."); *Coulter*, 673 F. Supp. 3d at 376 ("An ALJ may properly determine that mild limitations found during the Paragraph B analysis do not translate into functional limitations within the RFC. But an ALJ must provide a basis for understanding how they made that determination.").

When raising this argument in his motion papers before Judge Reznik, Plaintiff largely conflated the severity analysis with the RFC analysis. (*See* ECF No. 14 at 12-13.) I have therefore considered whether he has waived the objection. *See Murillo v. Colvin*, No. 14-CV-3555, 2016 WL 6208574, at \*2 n.2 (S.D.N.Y. Oct. 21, 2016) ("Generally, objections to a report and recommendation that were not raised before the magistrate judge are deemed waived."). I

16

conclude he has not.[6]  Although included in the section of the brief challenging the non-severity finding at steps two and three rather than the RFC finding at step four, Plaintiff's arguments suggested that he believed both were erroneous.  (*See, e.g.*, ECF No. 14 at 12 (citing *Parker-Grose* for proposition that it is error for ALJ to make RFC determination without considering impact of mild mental limitations on claimant's functioning); *id.* at 13 (stating ALJ did not "discuss the impact the claimant's mental impairments might have on the RFC determination").)  Judge Reznik correctly pointed out the distinction and found the ALJ's analysis as to both the severity of Plaintiff's mental impairment and Plaintiff's RFC to be without error.  (*See* R&R at 16-17.)  Plaintiff properly objected to the R&R as to both analyses.  (Obj. at 7-9.)

I agree with Judge Reznik's discussion regarding the distinction between the severity analysis and the RFC analysis, but more was needed from the ALJ as to the latter.  Although there is some authority supporting the proposition that an RFC determination need not specifically account for mental health impairments unless they are more than minimal, *see, e.g.*, *Suzanne H.*, 2021 WL 5309718, at *5, many cases have found procedural error where, as here, the ALJ fails to address even mild limitations in the RFC analysis, *see Coulter*, 673 F. Supp. 3d at 376-77 (collecting cases); *Laura Anne H.*, 2021 WL 4440345, at *9-10 (same).  I find the latter cases more persuasive, given the Second Circuit's statement (albeit in dictum) in *Parker-Grose* that mental impairments that are not more than minimal must nevertheless be considered in the RFC determination, *see* 462 F. App'x at 18,[7] and the plain language of the regulations

---

[6] Moreover, by not responding to Plaintiff's objections, the Commissioner arguably waived the issue of waiver.  *See Latkowski v. Barnhart*, 93 F. App'x 963, 972 (7th Cir. 2004).

[7] Although the Second Circuit in *Parker-Grose* remanded in part because the ALJ's determination that the claimant's mental impairments were not severe was not supported by substantial evidence, 462 F. App'x at 17, the Circuit also observed that "even if this Court concluded that substantial evidence supports the ALJ's finding that [the claimant's] mental

stating that the SSA will consider non-severe impairments when determining a claimant's RFC, *see* 20 C.F.R. §§ 404.1545(a)(2), (e); 416.945(a)(2), (e).  Judge Reznik is correct that the ALJ was not required to include mental health limitations in the RFC determination, given that he properly found only mild limitations at step two.  (R&R at 17.)  *See James D. v. Comm'r of Soc. Sec.*, No. 23-CV-1056, 2026 WL 835515, at *4 (W.D.N.Y. Mar. 26, 2026) ("When an ALJ finds that a claimant's impairments are non-severe or will have only a mild impact on a claimant's ability to function, the ALJ need not include restrictions addressing them in the RFC."); *Yamaris G. v. Comm'r of Soc. Sec.*, No. 22-CV-68, 2025 WL 2699118, at *6 (W.D.N.Y. Sept. 23, 2025) ("When substantial evidence in the record supports only mild limitations in mental functioning, an ALJ is not required to include mental limitations or restrictions in the RFC.").  Yet even if the RFC need not include any restrictions based on the claimant's mild mental impairments, the ALJ must still expressly consider those mild impairments and discuss how the step four analysis accounted for them.  *See James D.*, 2026 WL 835515, at *4; *Sharon J.*, 716 F. Supp 3d at 65; *Coulter*, 673 F. Supp. 3d at 378; *Amparo v. Comm'r of Soc. Sec.*, No. 20-CV-10285, 2022 WL 3084482, at *10 (S.D.N.Y. July 19, 2022), *report and recommendation adopted*, 2022 WL 3084380 (S.D.N.Y. Aug. 3, 2022).

Remand is required for this error.  A procedural error is harmless and remand is not required if "a searching review of the record assures [the Court] that the substance of the

---

impairment was nonsevere, it would still be necessary to remand this case for further consideration because the ALJ failed to account [for the claimant's] mental limitations when determining her RFC," *id.* at 18.  Even though the ALJ found that the claimant's mental impairment did "not cause more than minimal limitation in her ability to perform basic mental work activities and is therefore nonsevere," the ALJ "committed legal error" by "determin[ing] [the claimant's] RFC without accounting for any of the limitations arising from her mental impairment." *Id.*  As previously discussed, here the ALJ's determination of the severity of Plaintiff's mental impairment was supported by substantial evidence, but the ALJ still failed to discuss the limitations at step four, contrary to the Second Circuit's guidance in *Parker-Grose*.

18

regulation was not traversed." *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (summary order). "[W]here an ALJ fails to mention non-severe impairments in formulating the RFC, such an error may be considered harmless absent evidence that these impairments contributed to *any* functional limitations." *Smith v. Comm'r of Soc. Sec.*, No. 20-CV-8547, 2022 WL 421136, at *15 (S.D.N.Y. Feb. 11, 2022) (emphasis added); *see Amparo*, 2022 WL 3084482, at *11. But where the non-severe mental impairments are found to cause even mild functional limitations, a district court should remand because it cannot determine whether the ALJ's RFC determination is supported by substantial evidence without discussion of these mild limitations. *See James D.*, 2026 WL 835515, at *4; *Laura Anne H.*, 2021 WL 4440345, at *9-10; *MacDonald*, 2019 WL 3067275, at *4.

Here, the ALJ found at step two that Plaintiff had mild limitations in all four functional areas. (ALJD at 5-6.) The ALJ also noted that some of these mild functional limits could affect how Plaintiff applied directions or interacted with his co-workers or supervisors. (*Id.* at 5.) But beyond his conclusory assertions that he considered the mild limitations, the ALJ was silent as to how, if at all, they would affect the RFC that he ultimately determined Plaintiff to have at step four. As a result, "there is at least a reasonable likelihood" that some of these limitations could lead to a different result at step four had the ALJ considered Plaintiff's non-severe mental impairments. *Laura Anne H.*, 2021 WL 4440345, at *10. The ALJ was not necessarily required to repeat the step two analysis at step four, *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (*per curiam*), but his failure to "explain the basis for not including any mental limitations in

19

[Plaintiff's] RFC even though the ALJ had determined at step two that [Plaintiff] had mild limitations" requires remand, *Coulter*, 673 F. Supp. 3d at 380.[8]

On remand, the ALJ shall explain how the mild limitations that he found at step two factor into his determination of Plaintiff's RFC at step four.  The Court expresses no view as to whether those limitations require any modification of the ALJ's conclusion regarding Plaintiff's RFC or if so, how (if at all) that would affect his final determination.

## IV.   **CONCLUSION**

For the reasons set forth above, the Court adopts in part and rejects in part the Report and Recommendation of the Magistrate Judge, and remands this action to the Commissioner for reconsideration at step four in accordance with this order.  Plaintiff's motion for judgment on the pleadings is granted to the extent of the remand.  The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 14).

**SO ORDERED.**

Dated: May 4, 2026
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

[8] The ALJ appears to have considered some of these functional limitations in a hypothetical question posed to the vocational expert, (*see* A.R. at 53-54), but that related to step five of the sequential analysis, not step four.  *See McIntyre*, 758 F.3d at 151.  Unlike in *McIntyre*, where no error occurred at step four because "the ALJ took account" of the impairments discussed at step two, *id.* at 150, no such accounting occurred here.